Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | David L. Justus | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Judith M. Justus | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: District of Maryland

Case number  18-23912
(if known)

## Official Form 427
## Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

1. **Who is the creditor?**  Tower Federal Credit Union
   Name of the creditor

2. **How much is the debt?**
   On the date that the bankruptcy case is filed  $ 6,112.28
   To be paid under the reaffirmation agreement  $ 6,112.28
   $ 362.20 per *until fully paid starting 11/30/18.*

3. **What is the Annual Percentage Rate (APR) of interest?** (See Bankruptcy Code § 524(k)(3)(E).)
   Before the bankruptcy case was filed  1.99 %
   Under the reaffirmation agreement  1.99 % ☑ Fixed rate  ☐ Adjustable rate

4. **Does collateral secure the debt?**
   ☐ No
   ☑ Yes. Describe the collateral  2015 Kia Sportage
   Current market value  $ 16,050.00

5. **Does the creditor assert that the debt is nondischargeable?**
   ☑ *Not at this time.*
   ☐ No
   ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

6. **Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

   | | Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement |
   |---|---|---|
   | 6a. Combined monthly income from line 12 of Schedule I | $ 5,175.95 | 6a. Monthly income from all sources after payroll deductions  $ 5,175.95 |
   | 6b. Monthly expenses from line 22c of Schedule J | $ 6,555.68 | 6b. Monthly expenses  $ 6,555.68 |
   | 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | $ 0 | 6c. Monthly payments on all reaffirmed debts not included in monthly expenses  $ 0 |
   | 6d. Scheduled net monthly income. Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ (1,379.27) | 6d. Present net monthly income. Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets.  $ (1,379.27) |

Debtor 1   David L. Justus and Judith Justus            Case number _18-23912_

| | | |
|---|---|---|
| Are the income amounts on lines 6a and 6e different? | ☐ No<br>☐ Yes | Explain why they are different and complete line 10. |
| Are the expense amounts on lines 6b and 6f different? | ☑ (Yes checked)<br>☐ Yes. | Explain why they are different and complete line 10. |
| Is the net monthly income in line 6h less than 0? | ☐ No<br>☐ Yes | A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. |

**0. Debtor's certification about lines 7-9**

If any answer on lines 7-9 is Yes, the debtor must sign here.

If all the answers on lines 7-9 are No, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

x _David L. Justus_ (signature)   x _Judith M. Justus_ (signature)
Signature of Debtor 1             Signature of Debtor 2 (Spouse Only in a Joint Case)

**11. Did an attorney represent the debtor in the reaffirmation agreement?**

☐ No    Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
         ☐ No
         ☐ Yes

### Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement.

x _M. Spring Porter_ (signature)        _11/30/18_
Signature                               MM / DD / YYYY

M. Spring Porter
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

Official Form 427          Cover Sheet for Reaffirmation Agreement          page 2

B240A (Form B240A) (04/10)

Check one.
☐ **Presumption of Undue Hardship**
☑ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
District of Maryland

In re David L. Justus
Judith M. Justus,
*Debtor*

Case No. 18-23912

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Tower Federal Credit Union

☑ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Auto Loan, 2015 Kia Sportage

*For example, auto loan*

B. *AMOUNT REAFFIRMED*:   $ 6,112.28

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 11/30/2018, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 1.9900 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate      ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

B240A, Reaffirmation Documents                                                                                          Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐    $_____ per month for _____ months starting on_____.

☑    Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

   The amount reaffirmed, plus interest at the annual percentage rate of 1.990%, payable at the rate $362.20 per month until fully paid. Starting on (11/30/2018).

E. Describe the collateral, if any, securing the debt:

   Description:                Auto Loan, 2015 Kia Sportage
   Current Market Value    $              16,050.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

   ☑ Yes. What was the purchase price for the collateral?    $    20,651.57

   ☐ No. What was the amount of the original loan?    $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 6,112.28 | $ 6,112.28 |
| Annual Percentage Rate | 1.9900 % | 1.9900 % |
| Monthly Payment | $ 362.20 | $ 362.20 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

**PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one.    ☑ Yes    ☐ No

B. Is the creditor a credit union?

   Check one.    ☑ Yes    ☐ No

n

B240A, Reaffirmation Documents                                                                                                        Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                    $ N/A

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                                $

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $

   d. Amount of monthly payment required for this reaffirmed debt           $

   *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   [N/A] You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   [N/A] You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   [ ] You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B240A, Reaffirmation Documents                                                                                     Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

  (1)  I agree to reaffirm the debt described above.

  (2)  Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

  (3)  The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

  (4)  I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

  (5)  I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 11/9/18   Signature _Judith M Austin_  
                               *Debtor*

Date 11/9/18   Signature _[signed]_  
                               *Joint Debtor, if any*


**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor _Tower Federal Credit Union_     7901 Sandy Spring, Rd., Laurel, MD  20707  
              *Print Name*                                 *Address*

M. Spring Porter                           _M. Spring Porter_   11/30/18  
*Print Name of Representative*              *Signature*          *Date*


## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

[☒] A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 11/3/18  Signature of Debtor's Attorney _X [signed]_  

Print Name of Debtor's Attorney _David H. Sandler_

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

B240A, Reaffirmation Documents                                                                 Page 6

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

```
LOIN        77-10   JUSTUS/DAVID L            LN:65579    BR:  27 DT:102318
Current Balance   6111.95   Due Date         11/30/18  Coll Code 120 VRLCode    0
Payoff Int           .33    Sched Pmt          362.20  Descr: REFINANCE VEHICLE
Payoff LC            .00    Past Due              .00  APR                01.9900
Payoff Amount    6112.28    Unpaid LC             .00  Daily Interest      .33323
Cur Escrow Bal       .00    Unpaid Int            .00  Insurance Code          NO
Pend Distrib         .00    Last Int Date    10/22/18  Entry Date        03/16/15
Unpaid Div           .00    Term                   61  Credit Avail           .00
Adjusted Escrow      .00    Unpd PP Int           .00  Unpaid Fees            .00
Payoff W/Escrow  6112.28    Cred Limit              0  Unpaid Cred Ins        .00
                                                       Unapp Funds            .00
App Date         03/16/15   Loan Off/DecTell 051/051  Collector
Review Date      00/00/00   Original Amt     20651.57  Census Tract           .00

                            Pledge Amt            .00  Meth/Freq/Skip       T/M/
Alt Pmt              .00    Pledge Code             0  Action   D    Status    N
Alt Pmts Left          0    X Pledge             0-00  Ln Dr Acct              0

Co Makers              1    Last PBF Amt          .00
Credit Score 708 Pur 100    Last PBF Date    00/00/00  Paid Off Date   00/00/00
C/O Date         00/00/00   YTD Int            131.17  Last Pmt Amt      365.00
C/O Reason                  NYPD Int              .00  Last Pmt Date   10/22/18
MTD Prin          717.18    YTD Prin          3382.63  TTD Prin        14539.62
LOAN INSURANCE CODE IS PRESENT
```



**Tower Federal Credit Union**

P.O. Box 123 | Annapolis Junction, MD 20701-0123
301-497-7000 | 800-787-8328 | towerfcu.org



## Loan and Security Agreements and Disclosure Statement

| [X] FIXED RATE<br>[ ] VARIABLE RATE | LOAN DATE<br>3/16/2015 | LOAN NUMBER<br>65579 | ACCOUNT NUMBER<br>___77-10 | GROUP POLICY NUMBER<br>019-0411-8 | MATURITY DATE<br>3/30/2020 |
|---|---|---|---|---|---|
| **BORROWER 1** | | | **BORROWER 2** | | |
| NAME AND ADDRESS<br>DAVID L JUSTUS<br>905 ECHO BAY CT<br>GAMBRILLS, MD 21054-1616 | | | NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1)<br>JUDITH MARION JUSTUS<br>905 ECHO BAY CT<br>GAMBRILLS, MD 21054-1616 | | |

### TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate.<br>1.990 % | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br>$ 1,080.13 e | Amount Financed<br>The amount of credit provided to you or on your behalf.<br>$ 20,651.57 | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled.<br>$ 21,731.70 e | Total Sale Price<br>The total cost of your purchase on credit is<br>$<br>which includes your downpayment of $ |
|---|---|---|---|---|

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 59 | $362.20 | MONTHLY beginning | 4/30/2015 |
| 1 | $361.90 e | | 3/30/2020 |

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

**Demand:** [ ] This obligation has a demand feature. [ ] All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the Credit Union. If you get the insurance from us, you will pay $

| Filing Fees | Non-Filing Insurance |
|---|---|
| $ 0.00 | $ |

**Late Charge:** If a payment is 15 or more days late, you will be charged a late payment fee of $20.00.

**Security:** Collateral securing other loans with the Credit Union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the Credit Union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| KIA | SPORTAGE | 2015 | KNDPB3AC1F7707997 | UTILITY 4D | $ 21,750.00 | |
| | | | | | $ | |

Other (Describe)
Pledge of Shares $ _____ in Account No. _____ $ _____ in Account No. _____

**Variable Rate:**

[ ] The Annual Percentage Rate (APR) for Share Secured loans may increase during the terms of this transaction if: the dividend rate on the Shares offered as security changes (Index). A margin of 3.0% will be added to the Index value. The APR will change on the first day of every month to reflect any change in the Index. Any increase in the APR will result in more payments. If your loan were for $4000 at 4.5% for 48 months, and the APR increased to 4.75% after 1 year, you would have to make 1 additional payment.

[ ] The Annual Percentage Rate (APR) for Certificate Secured loans may increase during the terms of this transaction if: the dividend rate on the Certificate offered as security changes (Index). A margin of 3.0% will be added to the Index value. The Certificate must be renewed until the loan is completely paid. When the Certificate is renewed, the APR will change to reflect the new dividend rate. Failure to renew the Certificate will result in default under this Loan. Any increase in the APR may result in higher payments. If your loan were for $4000 at 4.5% for 48 months, and the APR increased to 4.75% after 1 year, your payment would increase by $0.35.

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

### SIGNATURES

By signing, or otherwise authenticating, as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign, or otherwise authenticate, as "Owner of Property" you agree only to the terms of the Security Agreement.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

| X [signature] (SEAL) 3/16/2015 | X [signature] (SEAL) 3/16/2015 |
|---|---|
| BORROWER 1                    DATE | BORROWER 2                    DATE |
| X                             (SEAL) | X                             (SEAL) |
| [ ] OTHER BORROWER [ ] OWNER OF PROPERTY [ ] WITNESS   DATE | [ ] OTHER BORROWER [ ] OWNER OF PROPERTY [ ] WITNESS   DATE |

© CUNA Mutual Group 1999, 2000, 01, 02, 03, 04, 06, 08 All Rights Reserved

KMDNH1 (NXX01A)-e

| Credit Union | Tower Federal Credit Union | | Loan No. 65579 | Acct. No. 77-10 |
|---|---|---|---|---|
| Borrower(s) | DAVID L JUSTUS | | JUDITH MARION JUSTUS | |

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of $ 20,651.57 | Amount Given to You Directly $ 0.00 | Amount Paid on Your Account $ 0.00 | Prepaid Finance Charge $ 0.00 |
|---|---|---|---|

Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| | | | |
|---|---|---|---|
| $ 20,651.57 To KIA MOTORS FINANCE | | $ To | |
| $ To | | $ To | |
| $ To | | $ To | |
| $ To | | $ To | |
| $ To | | $ To | |
| $ To | | $ To | |
| $ To | | $ To | |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you" or "your" mean each person who signs, or otherwise authenticates, this Agreement as a borrower.

**1. PROMISE TO PAY** - You promise to pay $ 20,651.57 to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is 1.990% per year.

For variable rate loans the initial interest rate is _____ % per year and will vary as follows:

☐ The Annual Percentage Rate (APR) for Share Secured loans may increase during the terms of this transaction if: the dividend rate on the Shares offered as security changes (Index). A margin of 3.0% will be added to the Index value. The APR will change on the first day of every month to reflect any change in the Index. Any increase in the APR will result in more payments. If your loan were for $4000 at 4.5% for 48 months, and the APR increased to 4.75% after 1 year, you would have to make 1 additional payment.

☐ The Annual Percentage Rate (APR) for Certificate Secured loans may increase during the terms of this transaction if: the dividend rate on the Certificate offered as security changes (Index). A margin of 3.0% will be added to the Index value. The Certificate must be renewed until the loan is completely paid. When the Certificate is renewed, the APR will change to reflect the new dividend rate. Failure to renew the Certificate will result in default under this Loan. Any increase in the APR may result in higher payments. If your loan were for $4000 at 4.5% for 48 months, and the APR increased to 4.75% after 1 year, your payment would increase by $0.35.

**Collection Costs:**

You agree to pay all costs of collecting the amount you owe under this Agreement, including court costs and reasonable attorney fees.

**2. PAYMENTS** - You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. If this is a variable rate loan, the Promise to Pay section tells you whether, if the interest rate increases, you will have to make more payments, higher payments, or if the final payment will be a balloon payment. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the premium or program fee in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS BY MAIL** - If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN** - This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law. *For all borrowers:* You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the Credit Union now and in the future. **The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default.** The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT** - You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT** - When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement, until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

KMDNH1 (NXX01A)-e

Credit Union Tower Federal Credit Union  
Borrower(s) DAVID L JUSTUS  
Loan No. 65579  
JUDITH MARION JUSTUS  
Acct. No. ▮▮▮77-10

## LOAN AGREEMENT (continued)

**7. EACH PERSON RESPONSIBLE** - Each person who signs, or otherwise authenticates, this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE** - If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES** - Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. USE OF ACCOUNT** - You promise to use your account for consumer (personal, family or household) purposes, unless the Credit Union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**14. OTHER PROVISIONS -**
If Tower Federal Credit Union is not shown on the Certificate of Title to the Property as first secured party and the Certificate of Title provided to us within 75 days after the date of the loan, a penalty **Annual Percentage Rate (APR) of 11.25** % will apply to the entire balance of the New & Used Auto, Boat, RV and Motorcycle loans and will remain in effect until the loan is paid in full. When the penalty APR becomes effective, your monthly payment will increase to an amount sufficient to pay off the loan in full at the penalty APR in substantially equal monthly payments as the same time the loan would have been paid in full. This APR increase will occur regardless of whether we exercise any other right or remedy permitted under this Agreement, any other security agreement or by law for your default.

Credit Union Tower Federal Credit Union  
Borrower(s) DAVID L JUSTUS  
JUDITH MARION JUSTUS  
Loan No. 65579    Acct. No. ▒▒▒77-10

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. The security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal dwelling. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property in another state without telling us.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.

If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

**8. DEFAULT** - You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.

After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.

If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*

**14. NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**15. OTHER PROVISIONS** - If Tower Federal Credit Union is not shown on the Certificate of Title to the Property as first secured party and the Certificate of Title provided to us within 75 days after the date of the loan, a penalty Annual Percentage Rate (APR) of 11.25 % will apply to the entire balance of the New & Used Auto, Boat, RV and Motorcycle loans and will remain in effect until the loan is paid in full. When the penalty APR becomes effective, your monthly payment will increase to an amount sufficient to pay off the loan in full at the penalty APR in substantially equal monthly payments as the same time the loan would have been paid in full. This APR increase will occur regardless of whether we exercise any other right or remedy permitted under this Agreement, any other security agreement or by law for your default.

KMDNH1 (NXX01A)-e

| Credit Union | Tower Federal Credit Union | | | | Loan No. 65579 | | |
|---|---|---|---|---|---|---|---|
| | P.O. Box 123 | | | | Annapolis Junction, MD 20701 | | |

| BORROWER 1 NAME AND ADDRESS | BORROWER 2 NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |
|---|---|
| DAVID L JUSTUS<br>905 ECHO BAY CT<br>GAMBRILLS, MD 21054-1616 | JUDITH MARION JUSTUS<br>905 ECHO BAY CT<br>GAMBRILLS, MD 21054-1616 |

OWNER OF COLLATERAL NAME AND ADDRESS

| Collateral | Property/Model/Make | Year | I.D. Number | Lien Amount | Value | Key Number |
|---|---|---|---|---|---|---|
| KIA | SPORTAGE | 2015 | KNDPB3AC1F7707997 | $ | $ 21,750.00 | |
| | | | | $ | $ | |

| Other (Describe) | | | | |
|---|---|---|---|---|
| Pledge of Shares $ | in Account No. | $ | in Account No. | |

## SECURITY AGREEMENT

In this Agreement all references to "Credit Union," "we," "our" or "us" mean the Credit Union whose name appears on this document and anyone to whom the Credit Union assigns or transfers this Agreement. All references to the "Loan" mean the loan with the loan number specified above. All references to "you" or "your" mean any person who signs, or otherwise authenticates, this Agreement.

**1. THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section above ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. The security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal dwelling. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal dwelling, the Property will secure only this Loan and not other loans or amounts you owe us.

**3. OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in a form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property in another state without telling us.

**6. PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.
If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.
If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

**7. INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

**8. DEFAULT** - You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it.

**9. WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.
After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.
If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

**10. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

**11. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**12. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**13. NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ *The following notice applies ONLY when the box at left is marked.*

**14. NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**15. OTHER PROVISIONS** - If Tower Federal Credit Union is not shown on the Certificate of Title to the Property as first secured party and the Certificate of Title provided to us within 75 days after the date of the loan, a penalty Annual Percentage Rate (APR) of 11.25 % will apply to the entire balance of the New & Used Auto, Boat, RV and Motorcycle loans and will remain in effect until the loan is paid in full. When the penalty APR becomes effective, your monthly payment will increase to an amount sufficient to pay off the loan in full at the penalty APR in substantially equal monthly payments as the same time the loan would have been paid in full. This APR increase will occur regardless of whether we exercise any other right or remedy permitted under this Agreement, any other security agreement or by law for your default.

## SIGNATURES

By signing, or otherwise authenticating, you agree to the terms of this Security Agreement.

| X [signature] | (SEAL) 1-12-18 | X [signature] | (SEAL) 1-12-18 |
|---|---|---|---|
| OWNER OF PROPERTY | DATE | OWNER OF PROPERTY | DATE |
| X | (SEAL) | X | (SEAL) |
| ☐ OWNER OF PROPERTY ☐ WITNESS | DATE | ☐ OWNER OF PROPERTY ☐ WITNESS | DATE |

KMDNH1 (NXX01A)-e



# MARYLAND NOTICE OF SECURITY INTEREST FILING
**DO NOT ACCEPT THIS DOCUMENT SHOWING ANY ERASURES, ALTERATIONS OR VOIDS.**

## THIS IS NOT A TITLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | BODY STYLE | CLASS | ODOMETER | BRAND | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| KNDPB3AC1F7707997 | 15 | KIA | TK | M | 000009 | A | 46668612 |

| EXCEPT. | GR. VEH. WT. | GR. COMB. WT. | FEE (TAGS) | INSPECTION DATE | DATE ISSUED |
|---|---|---|---|---|---|
| N/A | -3700 | 00N/A | $50.50 | N/A | 06/02/15 |

**NAME(S) AND ADDRESS OF REGISTERED OWNER(S)**
DAVID LYNDON JUSTUS
JUDITH MARION JUSTUS
905 ECHO BAY CT
GAMBRILLS   MD 21054-1616

**ODOMETER CODES**
A  Actual Mileage
B. Exceeds Mechanical Limits
C  Not Actual Mileage

CAL LEV

DUPLICATE OR CORRECTED
COPY *01*

THIS IS TO CERTIFY THAT A SECURITY INTEREST HAS BEEN DULY FILED WITH THE MOTOR VEHICLE ADMINISTRATION IN THE NAME OF THE SECURED PARTY BELOW ON THE VEHICLE DESCRIBED

**TERMINATION STATEMENT**
I, THE UNDERSIGNED, DO HEREBY RELEASE ALL RIGHTS AND INTERESTS IN THE VEHICLE DESCRIBED ABOVE

SIGNATURE OF SECURED PARTY    OFFICIAL CAPACITY    DATE OF RELEASE

NAME AND ADDRESS OF SECURED PARTIES

TOWER FEDERAL CREDIT UNION
PO BOX 660426
SACRAMENTO   CA 95866

OFFICIALLY ISSUED ON THE DATE SET FORTH              ADMINISTRATOR OF MOTOR VEHICLES

VR-002 (10/12)

THIS DOCUMENT CONTAINS AN EAGLE WATERMARK WHICH IS VISIBLE WHEN HELD TO LIGHT

NADAguides Value Report   10/23/2018

# 2015 Kia Sportage

Utility 4D EX 2WD I4

## Values

|  | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Retail |
|---|---|---|---|---|
| Base Price | $12,175 | $13,450 | $14,475 | $16,050 |
| Mileage (0) | N/A | N/A | N/A | N/A |
| Total Base Price | $12,175 | $13,450 | $14,475 | $16,050 |
| **Options** (add) | | | | |
| **Price + Options** | $12,175 | $13,450 | $14,475 | $16,050 |
| Certified Pre-Owned (CPO) | | | | +$1,075 |
| **Certified Price with Options** | | | | $17,125 |

**Rough Trade-In** - Rough Trade-in values reflect a vehicle in rough condition. Meaning a vehicle with significant mechanical defects requiring repairs in order to restore reasonable running condition. Paint, body and wheel surfaces have considerable damage to their finish, which may include dull or faded (oxidized) paint, small to medium size dents, frame damage, rust or obvious signs of previous repairs. Interior reflects above average wear with inoperable equipment, damaged or missing trim and heavily soiled /permanent imperfections on the headliner, carpet, and upholstery. Vehicle may have a branded title and un-true mileage. Vehicle will need substantial reconditioning and repair to be made ready for resale. Some existing issues may be difficult to restore. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition.

**Average Trade-In** - The Average Trade-In values on nadaguides.com are meant to reflect a vehicle in average condition. A vehicle that is mechanically sound but may require some repairs/servicing to pass all necessary inspections; Paint, body and wheel surfaces have moderate imperfections and an average finish and shine which can be improved with restorative repair; Interior reflects some soiling and wear in relation to vehicle age, with all equipment operable or requiring minimal effort to make operable; Clean title history; Vehicle will need a fair degree of reconditioning to be made ready for resale. Because individual vehicle condition varies greatly, users of nadaguides.com may need to make independent adjustments for actual vehicle condition.

**Clean Trade-In** - Clean Trade-In values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Vehicle will need minimal reconditioning to be made ready for resale. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition.

**Clean Retail** - Clean Retail values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition. Note: Vehicles with low mileage that are in exceptionally good condition and/or include a manufacturer certification can be worth a significantly higher value than the Clean Retail price shown.

© 2018 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.